## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| LIFENET, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>                    Defendants. | Civil Action No. 22-cv-00162-JDK |

## <u>DEFENDANTS' MOTION TO TRANSFER AND SUPPORTING MEMORANDUM</u>

### INTRODUCTION

Plaintiff urges the Court to decide—on an emergency basis—claims that are virtually identical to those in a suit that has been pending in the U.S. District Court for the District of Columbia for nearly six months. The plaintiff in the earlier-filed case is a trade association that brought suit on behalf of 93% of the U.S. air ambulance industry—including a company that is not only business partners with Plaintiff here, but that may well have the principal financial stake in this case. Indeed, that company has submitted declarations in support of both summary judgment in the earlier-filed case and Plaintiff's motion for expedition here. And the parties in both cases seek the same relief: vacatur of the challenged regulation. To prevent the unnecessary expenditure of judicial resources, avoid wasteful and duplicative litigation, and avert the possibility of inconsistent judgments, Defendants respectfully move the Court, under the first-to-file rule, to transfer this case to the U.S. District Court for the District of Columbia.

At issue in both cases is an interim final rule that implements the arbitration provisions of the No Surprises Act of 2020 as they pertain to air ambulance service providers. Pub. L. No. 116-

1

260, div. BB, tit. I (Dec. 27, 2020). The Act contains one set of statutory provisions governing the arbitration of payment disputes between physicians or other health care providers and group health plans or health insurance issuers, *see* 42 U.S.C. § 300gg-111, and a second set of statutory provisions addressing the arbitration of payment disputes between air ambulance service providers and plans or issuers, *see id.* § 300gg-112. Defendants have implemented these statutory provisions by issuing separate regulations in October 2021 that address each type of payment dispute. *See* 45 C.F.R. § 149.510, 149.520.[1]

In November 2021, the Association of Air Medical Services—an international trade association that represents over 93% of air ambulance service providers in the United States, including Plaintiff's partner and affiliate, Air Methods Corporation—brought suit in the U.S. District Court for the District of Columbia on behalf of its members, challenging the regulations promulgated under the No Surprises Act that relate to the arbitration of payment disputes involving air ambulance service providers. *See Ass'n of Air Med. Servs. v. U.S. Dep't of Health & Human Servs.*, No. 1:21-cv-03031-RJL (D.D.C.). In that case, the parties have fully briefed cross-motions for summary judgment, and the Honorable Richard J. Leon heard argument on March 21, 2022.

On April 27, 2022, over a month after oral argument in *Association of Air Medical Services*, Plaintiff filed this essentially duplicative case. The claims in the two cases challenging the air-ambulance regulations are virtually identical. The Plaintiff here, LifeNet, Inc., is business partners with Air Methods, one of the companies on whose behalf the plaintiff in *Association of Air Medical*

---

[1] The statute sets forth parallel amendments to the Public Health Service Act (PHSA), the Employee Retirement Income Security Act, and the Internal Revenue Code, and the interim final rules set forth parallel regulations implemented by HHS, the Department of Labor, and the Department of the Treasury. For ease of reference, except where otherwise noted, this brief cites only to the PHSA and to the HHS regulations.

*Services* is suing.[2] Air Methods has submitted declarations in both cases. And the administrative record in the earlier suit is fully developed and includes all the relevant material that pertains to the air ambulance regulations that Plaintiff challenges here.

"'Considerations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously.'" *West Gulf Maritime Ass'n v. Int'l Longshoremen's Ass'n*, 751 F.2d 721, 729 (5th Cir. 1985) (citation omitted). Thus, under the "first-to-file" rule, when a subsequent suit raises issues that are "substantially similar" to those raised by an earlier one, the second suit may be "dismissed, stayed, or transferred and consolidated" with the first. *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). Which course is appropriate is generally for "the court initially seized of a controversy . . . to decide." *Mann Mfrg. Inc. v. Hortex*, 439 F.2d 403, 407 (5th Cir. 1971). Accordingly, the role of the court hearing a later-filed case, such as this one, is limited to weighing whether there is a "likelihood of substantial overlap" with the earlier-filed one and, if so, transferring the later-filed case to the court where the earlier-filed one is being heard. *Id*. at 408 & n.6.

The issues in this case are, at a minimum, "substantially similar" to those in *Association of Air Medical Services*. Considerations of comity and the orderly administration of justice thus counsel in favor of a transfer of this action to the U.S. District Court for the District of Columbia, so that that court may determine whether this case should be consolidated with its predecessor.

---

[2] Defendants do not yet know, at the outset of this litigation, whether Plaintiff is itself a member of the association.

## RELEVANT BACKGROUND

### A.    The No Surprises Act

This case is about an interim final rule promulgated to implement portions of the No Surprises Act (NSA or the Act) by Defendants—the Department of Health and Human Services (HHS), the Department of Labor, and the Department of the Treasury (together, the Departments), along with the Office of Personnel Management (OPM). The principal aim of the NSA, enacted in late December 2020, is to address the phenomenon of surprise medical bills that result when a patient (particularly in an emergency) is unable to choose to receive care from an in-network provider. The NSA limits a patient's share of the cost of emergency services delivered by out-of-network providers, including air ambulance providers, and prohibits the practice of "balance billing." *See* 42 U.S.C. § 300gg-112(a)(2). The Act also addresses how a payment dispute in these situations between an out-of-network health care provider and a group health plan or health insurance issuer will be resolved. *See id.* § 300gg-112(b)(1)(A)-(B). The Act creates an arbitration mechanism ("independent dispute resolution" or "IDR" process) whereby each party will submit its proposed payment amount and an independent, private arbitrator, known as a "certified IDR entity," will select between the two offers. *Id.* § 300gg-112(b)(5)(A)(i). Congress also directed the Departments to create rules to establish this arbitration process, and to do so within one year of the NSA's enactment. *Id.* § 300gg-112(b)(2)(A).

Congress was particularly concerned with the problem of surprise billing in the air ambulance industry, and so the NSA contained several provisions specifically addressing the problem of surprise billing from air ambulance services. *See* 42 U.S.C. § 300gg-112 ("Ending surprise air ambulance bills"). The Act includes one set of statutory provisions addressing the arbitration of payment disputes involving physicians or other health care providers, *see id.*

§ 300gg-111, and a separate set of provisions addressing payment disputes involving air ambulance service providers, *see id.* § 300gg-112. The air ambulance provisions lay out factors unique to that industry for arbitrators to consider when deciding on a payment amount. *Id*. § 300gg-112(b)(5)(C)(ii).

Defendants issued interim final rules addressing both sets of statutory provisions. In one set of rules, Defendants established regulations governing the arbitration of payment disputes between physicians and other health care providers and plans or issuers. *See* 45 C.F.R. § 149.510. This Court vacated certain provisions of those regulations in a decision issued earlier this year. *Tex. Med. Ass'n v. HHS*, 6:21-cv-00425, 2022 WL 542879 (E.D. Tex. Feb. 23, 2022). Defendants also established a second set of regulations governing payment disputes involving air ambulance service providers. *See* 45 C.F.R. § 149.520. Those regulations were not at issue in *Texas Medical Association*, as no plaintiff in that action was an air ambulance service provider.

Defendants are preparing a set of final rules that they anticipate will supersede the portions of 45 C.F.R. § 149.510 that this Court has vacated, as well as portions of the separate regulation under 45 C.F.R. § 149.520 involving the arbitration of air ambulance payment disputes. Defendants anticipate that these rules will be published by early summer. Defendants have filed a notice of appeal to the Fifth Circuit of the judgment in *Texas Medical Association*. In light of the forthcoming rulemaking, Defendants filed an unopposed motion to hold that appeal in abeyance, and the Fifth Circuit granted that motion on May 3, 2022.

### B.    Proceedings in *Association of Air Medical Services*

In November 2021, the Association of Air Medical Services filed a two-count complaint in the U.S. District Court for the District of Columbia challenging the regulations concerning air ambulance service providers. Compl., *Ass'n of Air Med. Servs. v. HHS.*, No. 1:21-cv-03031

(D.D.C.), ECF No. 1 (attached as Exhibit A), *consolidated with Am. Med. Ass'n v. HHS*, No. 1:21-cv-03231 (D.D.C). There, the Association of Air Medical Services described itself as the international trade association that represents over 93% of air ambulance providers in the United States. Compl. ¶ 20 *Ass'n of Air Med. Servs*., No. 1:21-cv-03031 (D.D.C.), ECF No. 1. The Association supported its claim to standing in that action by alleging that its members, Air Methods Corporation, PHI Health, LLC, and Global Medical Response, Inc., would suffer a loss of revenue under the rule. *Id.* ¶ 123; *see also Ass'n of Air Med. Servs.*, No. 1:21-cv-03031 (D.D.C.), ECF 1-5 (Decl. of Grayson Michael Foster, Chief Financial Officer of PHI Health, LLC), ECF No. 1-6 (Decl. of Michael Preissler, Chief Financial Officer of Global Medical Response, Inc.), ECF No. 1-7 (Decl. of David Portugal, Chief Financial Officer of Air Methods Corporation).

The parties in *Association of Air Medical Services* have fully briefed cross-motions for summary judgment, based on an administrative record that spans more than 6,000 pages and that includes a broader range of supporting materials and comments from stakeholders than what was included in the administrative record in the *Texas Medical Association* action. *See Ass'n of Air Med. Servs.*, No. 1:21-cv-03031 (D.D.C.), ECF Nos. 5, 10, 11, 31, 44 (parties' briefs); *id*., ECF No. 12-1 (index to administrative record). Numerous amici have filed briefs in the *Association of Air Medical Services* action, including amici asserting interests unique to the context of surprise billing by air ambulance service providers. *Id.,* ECF Nos. 17, 20, 21, 24, 27, 33, 34, 35, 36, 37 (amicus briefs). Judge Richard J. Leon held oral argument on March 21, 2022, and the summary judgment motions remain pending. *See id.*, (minute entry Mar. 21, 2022); *id.*, ECF No. 57 (transcript of proceedings).

C.      **This Case**

On April 27, 2022—over five months after the complaint in *Association of Air Medical Services* was filed, and over a month after oral argument was held in that case—Plaintiff filed a two-count complaint in this Court challenging the same regulatory provisions that are at issue in the action pending before Judge Leon. ECF No. 1.

Plaintiff is business partners with Air Methods Corporation, which—as noted above—is a member of the Association of Air Medical Services. *See, e.g.*, LifeNet, About LifeNet: The LifeNet Story, https://www.lifenetems.org/ ("Through a partnership with Air Methods, LifeNet has helicopters at both the Texarkana and Hot Springs Regional Airports."). Air Methods, for its part, describes its business relationship with LifeNet as one following its "alternative delivery model." *See* Air Methods, Explore Our Healthcare Partners: LifeNet EMS, https://www.airmethods.com/air-medical/healthcare-partners/. As Air Methods has explained, under the "alternative delivery model," it provides aviation, fuel, maintenance, licensure, and assumes the responsibility for billing for air ambulance services. *See* Air Methods, No Surprises Act: Implementation of Air Ambulance Services: Meeting with Air Methods (Apr. 27, 2021) (page 5,817 of the administrative record in the District of Columbia action) (attached as Exhibit B).

The "alternative delivery model" is a term of art in the air ambulance industry. Under the "alternative delivery model," a national entity such as Air Methods handles the billing and realizes all profits or losses from medical billing, while a local partner is paid a fixed fee; in contrast, under the "traditional model," the local partner handles billing, and retains both the risk and the potential profit from billing for air ambulance services, while the national entity is instead paid a fixed fee. *See* Air Medical Insights, *Choosing an Air Medical Delivery Model* (Jan. 20, 2020), http://airmedicalinsights.com/2020/01/air-medical-transport-delivery-model/; see also Air

Medical Insights, *Making the Switch: from ADM to Traditional*, at 4
http://airmedicalinsights.com/adm-to-traditional-lp/ (explaining that under the alternate delivery
model, the local partner "no longer exercise[s] control over pricing, billing or collections practices
associated with its air ambulance program."). In other words, under the partnership between
LifeNet and Air Methods, LifeNet is paid a flat fee for its services, but Air Methods apparently
retains all interest in patient billing, meaning that it has a clear financial interest—and perhaps the
primary (or even the only) stake—in the resolution of payment disputes involving air ambulance
transports performed under the LifeNet-Air Methods partnership.[3]

In this action, Plaintiff seeks the same relief that the national association and Air Methods
have sought in the *Association of Air Medical Services* action, namely, the vacatur of portions of
the regulation addressing the arbitration of air ambulance payment disputes. What is more, Plaintiff
here seeks unjustifiably expedited briefing in support of a summary judgment motion with respect
to these claims, even though the rule Plaintiff challenges was issued in October 2021, over six
months ago, and briefing in the related case concluded several months ago. Indeed, it is telling
that, in support of its motion for expedited briefing, Plaintiff submits declarations from other air
ambulance service providers that are members of the Association of Air Medical Services, ECF
Nos. 19-1, 19-2, 19-3, as those companies have been active participants in *Association of Air
Medical Services* from the outset of that litigation. *See Ass'n of Air Med. Servs.*, No. 1:21-cv-03031
(D.D.C.), ECF No. 1-7 (Decl. of David Portugal, Chief Financial Officer of Air Methods), ECF

---

[3] The precise nature of the partnership between LifeNet, Inc. and Air Methods is unclear to
Defendants at this early stage of the litigation. If information is developed in this litigation that
reveals that Air Methods alone retains a financial interest in billing for air medical services, this
would call into question LifeNet's standing to bring this action.

No. 1-5 (Decl. of Grayson Michael Foster, Jr., Chief Financial Officer of PHI Health, LLC), ECF No. 1-6 (Decl. of Michael Preissler, Chief Financial Officer of Global Medical Response, Inc.).[4]

Despite the overlap of affiliated parties and claims between this case and *Association of Air Medical Services*, Plaintiffs have not filed a notice of related case. *See* ECF No. 1-1 (civil cover sheet); E.D. Tex. Local R. CV-42(a) ("Duty to Notify Court of Collateral Proceedings and Re-filed Cases. Whenever a civil matter commenced in or removed to the court involves subject matter that either comprises all or a material part of the subject matter or operative facts of another action, whether civil or criminal, then pending before this or another court or administrative agency, or previously dismissed or decided by this court, counsel for the filing party shall identify the collateral proceedings and/or re-filed case(s) on the civil cover sheet filed in this court."). Instead, they cite only *Texas Medical Association* case as a related case, even though that case does not involve the portions of the statute or regulations that specifically apply to air ambulance services. Because the *Texas Medical Association* case did not involve the statutory or regulatory provisions that apply to air ambulance services, this Court has not received full briefing or the full administrative record on the rulemaking process for the air ambulance regulations, as Judge Leon has in the *Association of Air Medical Services* case.

---

[4] Counsel for Plaintiff in this case also represents PHI Health, LLC in an action filed two days after this one in the Eastern District of Kentucky bringing similar challenges to the regulations promulgated under the No Surprises Act. *See* Compl. *PHI Health, LLC and Empact Midwest, LLC v. HHS*, No. 6:22-cv-00095-REW (E.D. Ky. Apr. 29, 2022), ECF No. 1.

## ARGUMENT

**This Case Should Be Transferred to the U.S. District Court for the District of Columbia under the First-to-File Rule**

The issues in this case are, at a bare minimum, substantially similar to the issues that have been fully briefed and argued in *Association of Air Medical Services*, and Plaintiff here seeks the same relief sought in that case.[5] The Court should therefore transfer this action to the U.S. District Court for the District of Columbia under the first-to-file rule, so that that court may determine whether this case should be consolidated with its predecessor. And Defendants respectfully submit that the Court should resolve this motion before embarking on the precipitous summary judgment proceedings that Plaintiff requests. "Although district courts have discretion as to how to handle their dockets, once a party files a transfer motion, disposing of that motion should unquestionably take top priority." *In re Apple Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020). *Accord, In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003) ("disposition of that [transfer] motion should have taken a top priority"); *E. Texas Boot Co., LLC v. Nike, Inc.*, No. 2:16-CV-0290-JRG-RSP, 2017 WL 2859065, at *2 (E.D. Tex. Feb. 15, 2017) (same). "Judicial economy requires that another district court should not burden itself with the merits of the action until it is decided [whether] a transfer should be effected." *In re Apple Inc.*, 979 F.3d at 1337 (quoting *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970)).[6]

The "first-to-file rule is grounded in principles of comity and sound judicial administration." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). As the

---

[5]   The Departments have explained that, even if the national association were to prevail in the *Association of Air Medical Services* action, any relief should be limited to the national association, or its identified association members. *Ass'n of Air Med. Servs.*, No. 1:21-cv-03031, ECF No. 44, at 27. For similar reasons, if Plaintiff were to prevail here, any relief should be appropriately limited.

Fifth Circuit has emphasized, the "federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *Id*. (citation omitted). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id*. "This concern applies where related cases are pending between two judges in the same district . . . as well as where related cases have been filed in different districts." *Id*.

Under the first-to-file rule, when a subsequent suit raises issues that are "substantially similar" to those raised by an earlier one, the second suit may be "dismissed, stayed, or transferred and consolidated" with the first. *Sutter Corp.*, 125 F.3d at 920. As a procedural matter, the "Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power*, 121 F.3d at 950. Thus, "[o]nce the *likelihood* of substantial overlap between the two suits ha[s] been demonstrated, it [i]s no longer up to the [second-filed court] to resolve the question of whether both should be allowed to proceed." *Mann*, 439 F.2d at 408 (emphasis added). Rather, "the ultimate determination of whether there *actually* [i]s a substantial overlap . . . belong[s] to the [first-filed court]," *id*., which "may decide whether the second suit filed must be dismissed, stayed, or transferred and consolidated," *Sutter Corp.*, 125 F.3d at 920.[7]

---

[6] Defendants requested Plaintiff's position on this motion via email on May 5. Plaintiff did not respond. Instead, on May 11, Plaintiff moved for expedition of this case, stating in its brief that it does not believe that transfer was appropriate.

[7] Earlier Fifth Circuit cases suggest that the second-filed court also has the discretion, in appropriate circumstances, to dismiss or stay the second-filed action. *See, e.g.*, *West Gulf*, 751 F.2d at 729 & n.1 (while "a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court," in "addition to outright

Thus, a "second-filed court plays a limited role when presented with a motion to transfer or stay based on the first-to-file rule." *Platt v. Nash*, No. 16-294, 2016 WL 6037856, at *1 (E.D. Tex. Oct. 14, 2016). That role is to decide whether the movant has shown a "*likelihood* of substantial overlap" between the two suits. *Mann*, 439 F.2d at 408 (emphasis added); *accord Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999) (second-filed court should determine only whether "the issues *might* substantially overlap") (emphasis added). If the movant makes this showing, then "the second-filed court allows the first-filed court to 'resolve the question of whether both [cases] should be allowed to proceed.'" *Platt*, 2016 WL 6037856, at *1 (citation omitted). The factors relevant to the substantial overlap inquiry "include whether 'the core issue' in each case is the same and whether 'much of the proof adduced . . . would likely be identical.'" *Marshall v. Chevron U.S.A. Inc.*, No. MO:19-cv-00273-DC-RCG, 2020 WL 9813023, at *2 (W.D. Tex. Dec. 10, 2020), *report and recommendation adopted*, No. MO:19-cv-273-DC, 2021 WL 2181148 (W.D. Tex. Jan. 6, 2021) (citation omitted).

This case has a "likelihood of substantial overlap" with the *Association of Air Medical Services* case already pending in the U.S. District Court for the District of Columbia. *Mann*, 439 F.2d at 408. As noted, Plaintiff here is business partners with Air Methods, which is a member of the Association of Air Medical Services, the plaintiff in the District of Columbia action, and Air Methods holds (at a minimum) a substantial financial interest in the billing for air medical services

---

dismissal, it sometimes may be appropriate to transfer the action or to stay it"); *id*. at 730 ("Our holding and discussion in *Mann* make plain that in this [second-filed] case the district court should have stayed, dismissed, or transferred [the plaintiff's] action."). Although those cases do not appear to have been overturned, later Fifth Circuit cases indicate that "once the [second-filed] court f[i]nd[s] that the issues might substantially overlap, the proper course of action [i]s for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and economy, proceed." *Cadle Co. v. Whataburger of Alice, Inc*., 174 F.3d 599, 606 (5th Cir. 1999).

performed under the Air Methods-LifeNet partnership. *See supra* at 6-7. Plaintiff's claims are substantially similar to those raised in *Association of Air Medical Services*, and unlike in *Texas Medical Association*, the claims specifically relate to the regulation governing air ambulance services. *See supra* at 8. And this suit was filed just a month after a hearing on the merits in *Association of Air Medical Services*. *See supra* at 8. The Association of Air Medical Services represents 93% of air ambulance providers, and complying with inconsistent judgments in that case (which could impact 93% of the industry) and this one (impacting a single plaintiff) could be particularly burdensome on both the air ambulance and health insurance industries. If ever there were a need "to avoid the waste of duplication" and "to avoid rulings which may trench on the authority of other courts," *Save Power*, 121 F.3d at 950, it is here.

That the parties here are not formally identical to those in *Association of Air Medical Services* is no barrier to transfer. Under the first-to-file rule, "[c]omplete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action." *Id.* at 951. The Fifth Circuit has explained that an "incomplete identity of parties does not mandate that two 'essentially identical' actions remain pending simultaneously where," as here, any "missing parties probably could be made parties" to the first-filed case. *Id*. (citing *West Gulf*, 751 F.2d at 731 n.5). Further, the Fifth Circuit has repeatedly noted that the first-to-file rule may be applied to "dismiss[] a second-filed action without prejudice even though it involved different plaintiffs than the first-filed action." *Id*. (citation omitted); *accord West Gulf*, 751 F.2d at 731 n.5.

The Seventh Circuit's decision in *National Health Federation v. Weinberger*, 518 F.2d 711 (7th Cir. 1975)—which the Fifth Circuit cited with approval in *Save Power* and *West Gulf*—is instructive. There, much like here, after one organization challenged a pair of regulations in the Southern District of New York, another organization challenged the same regulations in the

13

Northern District of Illinois. *Id*. at 712. The Seventh Circuit held that the district court should have dismissed the second-filed suit because the two cases raised the same issues—an outcome that was "particularly appropriate" given that the first-filed suit was at a more "advanced stage" and involved review of a "voluminous" administrative record. *Id*. at 712-13 & n.2. That the plaintiffs in the second-filed case differed from those in the first worked no inequity, the court explained, since the "dismissal would operate without prejudice." *Id*. at 713-14. Moreover, observing that "counsel for plaintiffs, prior to filing the [second] suit here, were aware of the [first-filed] suit" in the Southern District of New York, and "could have . . . as easily brought" their claims "in that district, which might then have led to a consolidation of the suits," the court suggested that "the filing of the [second] complaint here smacks of gamesmanship." *Id*. at 714.

Such concerns are even more pronounced in this case, given that Plaintiff here, as a business partner of a member of the Association of Air Medical Services, would presumably argue that it should benefit from a judgment in *Association of Air Medical Services* in its favor, *see* Compl. ¶ 20, *Ass'n of Air Med. Servs.* (invoking the interests of Association of Air Medical Services members, who make up "93% of air ambulance providers in the United States" and who represent "every emergency air ambulance care model"), a prospect that would pose a particularly acute risk of inconsistent judgments were this suit, concerning identical issues, to proceed in a separate forum. *Cf. West Gulf*, 731 F.2d at 731 n.5 (noting that the "local union defendants are in privity with the ILA and working in concert with the ILA and could be bound by any injunction the [first-filed] court . . . might issue"). Indeed, while the first-to-file rule does not require analysis of the potential res judicata effect of an earlier suit on a later one, *see Cadle*, 174 F.3d at 603-05, it is well established that a final judgment in a suit brought by an organization on behalf of its members can bind the members. *See, e.g.*, *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l*

*Planning Agency*, 322 F.3d 1064, 1083-84 (9th Cir. 2003) (plaintiffs' "membership in and close relationship with the Association is sufficient to bind them as parties in privity for res judicata purposes"). Given that a judgment in the *Association of Air Medical Services* suit could potentially bind up to 93% of the air ambulance service providers, the practical effects of navigating inconsistent judgments could be particularly burdensome for all involved.

Regardless, even if the potential res judicata effect of a judgment in *Association of Air Medical Services* were less clear, an in-depth analysis of this issue goes well beyond the "limited role" that the "second-filed court plays . . . when presented with a motion to transfer or stay based on the first-to-file rule." *Platt*, 2016 WL 6037856, at *1. Here, given the similarity of parties and claims, there is at least a "*likelihood* of substantial overlap" between this case and *Association of Air Medical Services*, *Mann*, 439 F.2d at 408 (emphasis added), and this Court need go no further to resolve this motion.

## CONCLUSION

For the foregoing reasons, the Court should transfer this case to the U.S. District Court for the District of Columbia so that that court may determine whether it should be consolidated with *Association of Air Medical Services*.


Dated:  May 12, 2022                          Respectfully submitted,


                                             BRIAN M. BOYNTON
                                             Acting Assistant Attorney General

                                             BRIT FEATHERSTON
                                             United States Attorney

                                             JAMES GILLINGHAM
                                             Assistant U.S. Attorney
                                             Eastern District of Texas
                                             110 N. College Street; Suite 700

Tyler, Texas 75702
E-mail: James.Gillingham@usdoj.gov
Phone: (903) 590-1400
Fax: (903) 590-1436
Texas State Bar # 24065295

SEAN C. DAY
Special Assistant United States Attorney
Eastern District of Texas
101 E. Park Blvd., Suite 500
Plano, Texas 75074
Phone: (202) 934-4060
Fax: (972) 590-1209
D.C. Bar No. 502363

ERIC B. BECKENHAUER
Assistant Branch Director

JOEL McELVAIN
Senior Trial Counsel

/s/ Anna Deffebach
ANNA DEFFEBACH
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 305-8356
Fax: (202) 616-8470
E-mail: anna.l.deffebach@usdoj.gov
D.C. Bar No. 241346

*Counsel for Defendants*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the Defendants has complied with the meet and confer requirements of Local Rule CV-7. On May 5, 2022, counsel for the Defendants emailed counsel for the Plaintiff to state that the Defendants intended to file this motion to transfer, and asked counsel for the Plaintiff to state their position with respect to a transfer.  Counsel for the Plaintiff did not respond to that email, but instead filed a motion for expedited summary judgment briefing which states the Plaintiff's opposition to a transfer.

/s/ Anna Deffebach
ANNA DEFFEBACH

## CERTIFICATE OF SERVICE

I hereby certify on this 12th day of May, 2022, a true and correct copy of this document was served electronically by the Court's CM/ECF system to all counsel of record.

/s/ Anna Deffebach
ANNA DFFFEBACH