# EXHIBIT 6

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| LIFENET, INC._____Plaintiff,_____v._____U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,_____U.S. DEPARTMENT OF LABOR,_____U.S. DEPARTMENT OF THE TREASURY,_____OFFICE OF PERSONNEL MANAGEMENT,_____and the_____CURRENT HEADS OF THOSE AGENCIES IN THEIR OFFICIAL CAPACITIES,_____Defendants. | Case No. 6:22-cv-00162-JDK |

## DECLARATION OF LIFENET, INC.

1. My name is James L. Gaines. I am over the age of eighteen. I am employed by LifeNet, Inc. ("LifeNet"). My job title is General Counsel. I have personal knowledge of the matters contained herein.

2. LifeNet provides air ambulance services in Texas, Arkansas, Louisiana, and Oklahoma. LifeNet's headquarters are in Texarkana, Texas.

3. Many of the emergency air ambulance services that LifeNet provides are subject to the No Surprises Act's (NSA's) balance-billing prohibition and to that Act's Independent Dispute Resolution (IDR) process.

1

4. As of the date of this Declaration, LifeNet has performed approximately 21 emergency air transports, in 2022, for which the right to reimbursement may be governed by the No Surprises Act and its implementing regulations.

5. LifeNet is compensated for these services by Air Methods Corporation ("Air Methods") pursuant to a contract between the two companies, which was first entered into in October 2021, and which is of limited duration. That contract also provides that Air Methods has responsibility for pursuing the collection of bills for LifeNet's services.

6. I expect that open negotiation with insurance companies and health plans, over out-of-network air ambulance services provided by LifeNet, will not always successfully resolve disagreements over an appropriate reimbursement rate. In these circumstances, a certified IDR entity will then determine the reimbursement rate, according to processes set forth in the NSA and the Departments' regulations.

7. I believe that the offers submitted to the IDR entity, for air ambulance services provided by LifeNet, will in many and perhaps all cases be above the QPA. That is because, among other reasons, LifeNet has for years attempted to become an "in network" provider for many ERISA health plans, but those plans have refused to agree to pay reasonable rates for LifeNet's services. Based on LifeNet's experience in the market, I expect the QPA will in many cases be significantly below the amounts that LifeNet has been paid for its out-of-network emergency transports. Additionally, at least in some cases, the QPA will not reflect the acuity of the patient who received the air transport or the population density at the point of pickup, both of which are factors that the No Surprises Act requires an IDR entity to consider, but which the QPA Presumption will overwhelm.

8. I believe that the offers submitted to the IDR entity by *payors*, for the air ambulance services provided by LifeNet, will in many if not all cases will be close to the QPA. Indeed, health insurance companies have already indicated they plan to submit bids equal to the QPA. *See, e.g.*, Br. of America's Health Insurance Plans, *Texas Medical Association, et al. v. U.S. Dep't Health & Hum. Serv'cs, et al.*, 21-cv-00425, Dkt. 75, at 3 (describing the Departments' "QPA-centric" approach to the IDR process and praising it for making out-of-network rates "more predictable," because "most cases can be resolved by reference to the QPA alone").

9. The QPA Presumption adopted in the Department's regulations will therefore make it more challenging for Air Method's offers (of an appropriate amount of reimbursement for LifeNet's services) to win the IDR proceeding, compared to a process in which the IDR entity was free to consider all the statutory factors without the QPA Presumption. Thus, the QPA Presumption will thus result in lower IDR determinations of reimbursement rates for the services provided by LifeNet.

10. The lower reimbursement rates, determined by IDRs applying the QPA Presumption, will immediately cause an injury to LifeNet because these lower rates will constitute a lower dollar valuation for LifeNet's services. These determinations will instantly devalue LifeNet's services in a critically important market, namely, the market of reimbursement paid by commercial payors.

11. This lower reimbursement rate will cause LifeNet's compensation to decrease. The application of the QPA Presumption in IDR proceedings will drive out-of-network reimbursement rates to the QPA as a benchmark. That in turn will cause LifeNet's compensation to decrease significantly.

12. For the foregoing reasons, the QPA Presumption directly harms LifeNet's financial interests.

13. LifeNet is not a member of the Association of Air Medical Services (AAMS).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on ___5/13/2020___ . (date).

Signature: _____

Printed Name: ___JAMES L. GAINES___